## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| *In re:* | § | **Case No. 08-40116-705** |
| | § | |
| **Go Fig, Inc.***, et al.***,** | § | **Chapter 7 – Converted** |
| | § | **and Jointly Administered** |
| | § | |
| **Debtors.** | § | **[Related to Docket #528]** |

### MEMORANDUM & OPINION ON TWO THRESHOLD ISSUES OF LAW
### AND ORDER ON PROCEDURAL MATTERS

On October 6, 2008, United Industries Corporation ("UIC") filed an Application for Allowance of Administrative Priority Claim (the "Motion to Allow") [Docket #528], requesting the allowance of: (1) administrative expenses (the "Premises Expenses") incurred by the Debtors for UIC's post-petition, pre-rejection performance under the terms of a now-rejected prepetition lease (the "Lease") of nonresidential real estate (the "Premises"); and (2) administrative expenses (the "Restoration Expenses," together with the Premises Expenses, the "Administrative Expenses") for the post-rejection cleaning and restoration of the Premises.  On November 26, 2008, the chapter 7 trustee (the "Trustee") objected to the Motion to Allow and requested a continuance of the December 3, 2008 hearing on the matter (the "Motion to Continue") [Docket #534].  On December 1, 2008, an expedited hearing on the Motion to Continue was held,[1] after which the Court entered an agreed order (the "Scheduling Order"[2]) [Docket #541] proposed by the parties, which bifurcated the hearing on the Motion to Allow into a preliminary hearing on two

---

[1] The Court did not dispose of the portion of the Motion to Continue in which the Trustee objected to the Motion, but preserved the objection.

[2] Due to an administrative technicality, the Scheduling Order was not entered onto the docket until December 16, 2008, a day after the first deadline for briefing on the threshold legal issues, as agreed by the parties.  This did not affect the parties' performance

threshold issues of law, and a final evidentiary hearing to be held after the disposition of the threshold issues. Pursuant to the Scheduling Order, briefing on the two threshold legal issues then was submitted by the parties [Docket ##540 and 547, respectively]. Consistent with applicable law and upon consideration of the arguments, the Court disposes of the two threshold legal issues as set forth below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On January 7, 2008 (the "Petition Date"), the Debtors filed for bankruptcy relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"[3]), thereby commencing the jointly administered cases (collectively, the "Case"). Prior to the Petition Date, certain of the Debtors, as leasees, agreed to lease the Premises from UIC, as leasor, and paid to UIC a $795,000.00 security deposit (the "Security Deposit") to secure their performance. As of the Petition Date, the Lease was an unexpired lease, and therefore was subject to assumption or rejection under § 365. More than two months after the Petition Date, on March 14, 2008, the Debtors filed a motion to reject the Lease (the "Motion to Reject") [Docket #136]. On April 3, 2008, the Court entered an order [Docket #164] granting the Motion to Reject and making rejection effective upon surrender of the Premises. On May 11, 2008, UIC filed a Motion to Compel [Docket #247], requesting that the Debtors be ordered to surrender the Premises. On May 16, 2008, the Court entered an order [Docket #263] granting a Motion to Convert [Docket #195] the Case to a proceeding under chapter 7 of the Bankruptcy Code.[4] On May 19, 2008, the Trustee was appointed in the Case [Docket #277], replacing the chapter 11 debtor in possession

pursuant to the Scheduling Order.

[3] Hereinafter, "section[s]" or "§[§]" refer to the section(s) of the Bankruptcy Code.

2

("DIP").  On May 20, 2008, the Debtors vacated the Premises and the Lease was rejected. UIC now seeks allowance of its Administrative Expenses.

## II.  ANALYSIS

### A.  Threshold Issue 1:  Is § 503(b)(1)(A) Applicable to Determining Whether to Allow UIC's Administrative Expenses?

The Trustee argues that allowance of the Administrative Expenses is limited under § 503(b)(1)(A) to those costs and expenses that were actual and necessary to the preservation of the estate.  UIC contends that the § 503(b)(1)(A) limitations do not apply.

### 1.    The Law on Allowance of Administrative Expense Claims.

#### a.    Statutory Law and Case Law.

Section 503(b) provides that "[a]fter notice and a hearing, there shall be allowed administrative expenses . . ."  11 U.S.C. § 503(b).  This straightforward language is a general provision for the allowance of administrative expenses.[5]  Section 503(b)(1) provides examples of the types of costs and expenses that may constitute "administrative expenses" under § 503(b).  11 U.S.C. § 503(b)(1).  Among the examples are the actual, necessary costs and expenses of preserving the estate.  11 U.S.C. § 503(b)(1)(A).  As such, § 503(b)(1)(A) is double-edged: it sets forth what *is* an example of an administrative expense (an actual and necessary cost or expense incurred in estate preservation), and what *is not* an administrative expense (a non-actual or unnecessary cost or expense incurred in estate preservation).  However, the § 503(b)(1) examples are illustrative, not exhaustive.  11 U.S.C. § 102(3)(providing that the terms "includes" and "including" are not

---

[4] The Motion to Convert the Case was filed and prosecuted by another creditor—not UIC.
[5] "Administrative expenses" are those costs and expenses incurred by a party for the post-petition rendering of goods or services to the debtor or estate.

3

limiting); *see In re Lazar*, 207 B.R. 668, 674 n.11 (Bankr. C.D. Cal. 1997).  By the plain language of the statute, "expenses not explicitly listed in [§] 503(b) can receive administrative-expense status in one of two ways, either as a non-listed 'actual, necessary' expense of preserving the estate under [§] 503(b)(1)(A) [as § 503(b)(1)(A) itself also lists its own examples with the term "including"] or as a non-listed administrative expense under [§]503(b) in general." *Alabama Surface Mining Commission v. N.P. Mining Co., Inc. (In re N.P. Mining Co., Inc.)*, 963 F.2d 1449, 1452 (11ᵗʰ Cir. 1992).

In addition, § 365(d)(3) affects the allowance of administrative expenses by providing that "[t]he trustee shall timely perform all the obligations of the debtor . . . arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, *notwithstanding section 503(b)(1) of this title*."  11 U.S.C. § 365(d)(3)(emphasis added).  Section 365(d)(3) does not create a separate right to an administrative expense payment outside § 503(b). Rather, it injects additional dynamics into the operation of § 503(b).  First, § 365(d)(3) makes mandatory ("shall timely perform") the payment by the trustee of rent incurred by a leasee in its performance under an unexpired nonresidential real estate lease.[6]  Therefore, by operation of law, a landlord is entitled to allowance under § 503(b) of costs and expenses incurred *according to the terms of the lease*, *whatever those terms happen to be*, regardless of whether the Court otherwise might judge their incurrence to have been non-beneficial to the estate.   This means that a bankruptcy court has no discretion under

---

[6] UIC did not request immediate payment of any allowed amount of its Premises Expenses.  Accordingly, the Court does not opine on whether the "shall timely perform" mandate of § 365(d)(3) does—or does not—entitle a landlord to immediate payment of its allowed administrative expense for rent.

§ 503(b) in determining whether to allow a cost or expense described in § 365(d)(3), beyond determining whether the landlord established that it performed according to the terms of the lease.   Second, § 365(d)(3) makes irrelevant the issue of whether the landlord's performance preserved the estate or—if it did preserve the estate—whether the costs and expenses incurred were actual  and necessary to the preservation.  The lease and the leasee's post-petition performance under it—not reasonableness, not actualness, not necessariness, not benefit to the estate—is what the Court considers in determining whether a landlord is entitled to allowance of such administrative expenses.

The operation of § 365(d)(3) as a complement to § 503(b) is perhaps best appreciated in light of the fact that the Bankruptcy Code makes post-petition landlords differently situated from other post-petition expense holders. For most post-petition goods and service providers, the example in § 503(b)(1)(A) operates as a protection.  It ensures that, so long as performance provided the benefit of estate preservation, the administrative expense holder will be allowed its reasonable expenses arising from that performance.  Without such protection, a debtor would have a difficult time finding anyone willing to do business with it.   Section 503(b)(1)(A) and its limitations do not work an injustice on most post-petition expense holders because these parties are "dealing voluntarily with a bankrupt and thus knowingly assuming the risk of not being fully compensated for their services . . . "  *In re Handy Andy Home Improvement Ctrs., Inc.*, 144 F.3d 1125, 1128 (7th Cir. 1998).  They can walk away if the risk of nonpayment becomes too high.

By contrast, the landlord to an unexpired lease must continue to perform upon the

terms of that lease, until such time as the lease is assumed or rejected.[7]   The landlord

does not voluntarily choose to do post-petition business with the debtor.  *Id.*  And, without

§ 365(d)(3), § 503(b)(1)(A) could be used against a landlord to achieve a result that would

be the effective equivalent to post-performance modification of the lease.   The trustee

could seek non-allowance of the landlord's expenses by arguing that they did not

preserve the estate—thereby making the landlord a victim of the trustee's 20/20 hindsight,

when it becomes clear that the DIP or trustee's earlier decision not to reject the lease

sooner was a bad one. Section 365(d)(3) protects the landlord by ensuring that allowance

of its costs and expenses is not dependent upon to the luck of the DIP or trustee's

business acumen or other serendipity.

The majority of courts that have considered the operation of § 365(d)(3) have

arrived at the same conclusion: costs and expenses incurred for post-petition,

pre-rejection performance under an unexpired nonresidential real estate lease must be

allowed as an administrative expense regardless of § 503(b)(1)(A) limitations. *In re Matter*

*of South Lincoln Med. Group, P.C.*, 2008 WL 506086, at *2 (Bankr. D. Neb. Feb. 21,

2008)(citing *In re Brewer*, 233 B.R. 825, 829 (Bankr. E.D. Ark. 1999), and *In re Liberty*

*Outdoors, Inc.*, 205 B.R. 414, 417 (Bankr. E.D. Mo. 1997)); *In re Worths Stores Corp.*, 135

B.R. 112, 115 (Bankr. E.D. Mo. 1991)(citing numerous cases). To counter this case law,

the Trustee relies primarily on *In re JAS Enterprises, Inc.*, 180 B.R. 210 (Bankr. D. Neb.

1995).   *In re JAS Enterprises* reasoned that requests for allowance of administrative

expenses for performance pursuant to an unexpired nonresidential real estate lease are

---

[7] The landlord cannot avoid performing simply because it believes that performance will
not serve to preserve the estate or because it will cause the landlord to incur non-actual

subject to the "actual, necessary" test of § 503(b)(1).  *Id.* at 217-18.  However, this Court

declines to adopt the reasoning of *In re JAS Enterprises*, as it "reads out" of § 365(d)(3)

the mandatory nature of the plain language of the statute.

b.    **Policy Considerations.**

The Trustee argues that UIC's position does a disservice to the general unsecured

creditors by draining the pool of assets for distribution.[8]  However, before the Court is not

an issue of fairness to the general unsecured creditors; it is an issue of the application of

the plain language of the statute. It is judicial hubris to presume that effecting the plain

language of a statute is contrary to justice.   Applying the plain language of the

statute—whatever that language may be—accomplishes the proper result intended by

the law and, thus, affords to each party the treatment to which they are entitled.  If a party

disagrees with the result of applying the plain language of a statute, such disagreement is

an issue to address with Congress, not this Court.

Moreover, the Court does not agree that application of the plain language of the

statute works an injustice.   The dovetailing of § 503(b) and § 365(d)(3) reflects the

balancing of the interests of the general unsecured creditors with the concern for fairness

to the post-petition landlords, while also affording latitude to the DIP or trustee to make

business decisions for the estate.  Congress allows the DIP or trustee alone to determine

whether to reject or assume a lease (and, if the lease is not immediately rejected, to

determine how the premises will be used) for the benefit of the estate and its creditors.

While the affected landlord can complain if there is an issue with adequate assurance or

_____

or unnecessary costs.

[8] Both parties appear to agree that, post-petition, the Premises eventually were used as

7

abandonment, beyond this, it must wait for the DIP or trustee to make a business decision regarding treatment of the lease. Given this, § 365(d)(3)'s mandatory language compelling the debtor to perform payment of rent is understandable.

### 2.    The Premises Expenses Portion of UIC's Administrative Expenses.

Given the statutes, case law, and policy considerations analyzed above, the Court **HOLDS** that (1) pursuant to § 365(d)(3), the Trustee has an obligation to pay the Premises Expenses allowed under § 503(b); and (2) pursuant to § 365(d)(3), the Court has no discretion under the general provision § 503(b) in determining whether to allow the Premises Expenses, beyond determining whether the evidence establishes that the costs and expenses were incurred pursuant to the Lease.

### 3.    The Restoration Expenses Portion of UIC's Administrative Expenses.

On May 14, 2008, the Court entered its Order to Compel (the substantive terms of which were provided by agreement by the parties), which provides that UIC may "assert and recover" its expenses for cleaning and restoring the Premises pursuant to "§§ 365(d)(3) and/or 503(b)."[9] UIC now requests allowance of the Restoration Expenses pursuant to this provision of the Order to Compel.

The Court first notes that the language of the Order to Compel as to UIC's purported rights pursuant to § 365(d)(3) is legally inoperative. Section 365(d)(3) applies only to costs and expenses incurred "until such lease is assumed or rejected." The

---

nothing more than a "glorified storage facility."

[9] The Trustee noted several times that he was not appointed at the time the decision not to immediately reject the Lease was made, or at the time the DIP agreed to the terms of the Order to Compel, suggesting that he questions the soundness of these decisions. However, the fact that the Trustee may not agree with his predecessor's decisions is irrelevant to whether the Trustee now is bound by them as to this instant matter.

Restoration Expenses, however, were incurred *after* the Lease was rejected. Thus, as a matter of law, § 365(d)(3) cannot apply to relieve UIC from the "actual and necessary" test of § 503(b)(1)(A). However, the unavailability of § 365(d)(3) has no significance, because the Restoration Expenses cannot be allowed pursuant to § 503(b)(1)(A) in the first place. Section 503(b)(1)(A) establishes that the actual and necessary costs for *preserving the estate* are allowable administrative expenses. Nothing about the Restoration Expenses, which were incurred post-rejection, could be construed as having "preserved the estate."

However, this does not foreclose allowance of the Restoration Expenses under § 503(b) entirely because (as discussed earlier) the general provision of § 503(b) provides for the allowance of other administrative expenses, outside those illustrative examples enumerated in § 503(b)(1). The Court treats the Restoration Expenses as being asserted under this general provision, and allowance will be determined by the Court in light of the facts, including the prior concession of the Debtors as to the administrative expense nature of the Restoration Expenses, the reasonableness of the Restoration Expenses, and the good faith of UIC in incurring these costs and expenses.[10]

Accordingly, the Court **HOLDS** that (1) the Restoration Expenses are administrative expenses pursuant to § 503(b) and the Order to Compel; (2) allowance of the Restoration Expenses cannot be granted pursuant to § 503(b)(1)(A); and (3) allowance of the Restoration Expenses may be granted pursuant to the general provision

---

[10] The Order to Compel provides that UIC may assert and recover its costs and expenses for cleaning and restoration, acknowledging that these expenses may constitute administrative expenses. The Order to Compel also preserves the right of any party to object to the reasonableness of the costs and expenses. Nothing in the Order to Compel pre-determines that the asserted costs and expenses will be *allowed* administrative expenses.

of § 503(b), and the Court will exercise its judgment in determining allowability.

**B.  Threshold Issue 2: Does the Trustee Have a Defense of Recoupment That Would Permit Him to Reduce UIC's Allowed Administrative Expenses by the Amount of the Security Deposit?**

The Trustee argues that he is entitled to reduce UIC's allowed Administrative Expenses by the amount of the Security Deposit under the doctrine of recoupment.  UIC contends otherwise.

The common law doctrine of recoupment provides that a defendant may reduce a plaintiff's damages because of a demand by the defendant arising out of the same transaction upon which the plaintiff's claim arises.  Black's Law Dictionary at 1280 (7th ed. 1999); *Bird v. Carl's Grocery Co., Inc. (In re NWFX, Inc.)*, 864 F.2d 593, 597 (8th Cir. 1989)(citing *Ashland Petroleum Co. v. Appel (In re B & L Oil Co.)*, 782 F.2d 155, 157 (10th Cir. 1986)).  Recoupment is a defense, not an independent claim, and is asserted "strictly for the purpose of abatement or reduction of [a plaintiff's] claim."  *In re Graves*, 234 B.R. 149, 150 (Bankr. M.D. Fla. 1999)(quoting *University Med. Ctr. v. Sullivan*, 973 F.2d 1065, 1079 (3[d] Cir. 1992)).  Because the right to recoupment arises under state law and a "claim" is determined in bankruptcy under state law, recoupment survives the commencement of a bankruptcy case intact.[11]  However, in the bankruptcy context,

---

[11] This stands in contrast to the treatment in bankruptcy of setoff.  Setoff, like recoupment, affords the relief of offset.  However, setoff, unlike recoupment, is available when the countervailing claims arise from independent transactions.  Although modern pleading procedure generally has made the distinction between setoff and recoupment less significant, in the bankruptcy context, the difference between the two doctrines remains important.  The right to setoff is subject to the automatic stay of § 362; the defense of recoupment is not subject to the stay and relief from the stay is not required to recoup. *In re O'Neil*, 2008 WL 2625863, at *6 (D. Neb. Jun. 26, 2008)(internal quotation omitted).  Additionally, while recoupment is fully available as a defense in bankruptcy, setoff is expressly limited by § 553.  Only the defense of recoupment has been asserted here.

recoupment ordinarily is asserted by a creditor as a defense against a claim asserted against it by the debtor.  In this situation, however, it is the Trustee—not UIC—asserting the defense.  Therefore, as a preliminary matter of law, the Court must be satisfied that the Trustee may assert the defense of recoupment.

There appears to be some disagreement in the case law on this issue.  At least one court, in rejecting a trustee's assertion of recoupment, noted that "only *creditors* have been allowed use of the doctrine [of recoupment] as a defense to abate or reduce a claim made by a debtor."  *Brown v. Snellen (In re Giesing)*, 96 B.R. 229, 233 (Bankr. W.D. Mo. 1989)(emphasis in original).  However, in the more recent case of *e.Spire Communications, Inc. v. Morris Plumbing & Elec. Co., Inc. (In re e.Spire Communications, Inc.)*, 293 B.R. 639 (Bankr. D. Del. 2003)(J. Jerry W. Venters), the court held that the DIPs could assert the defense of recoupment because the trustee[12] is preserved those defenses that the debtor would have had prepetition.  *Id.* at 649 (holding that the DIPs could reduce the amount asserted by the creditor in its proof of claim by the amount owed to the debtor by that creditor for the DIPs' prepetition performance under the same contract upon which the creditor's claim was based).  The Court is persuaded by *In re e.Spires* and **HOLDS** that, if a debtor prepetition had a right to recoupment under state law, such right is preserved post-petition and may be asserted by the trustee in defense of a creditor's asserted right to payment.

With this initial issue resolved, the Court turns to issue of whether the Trustee has established his asserted defense of recoupment.  If the Trustee has a defense of recoupment, it must arise under applicable state law.  No party disputes that Missouri law

11

provides for the defense of recoupment and the defense includes the "same transaction" requirement.

If the Trustee were asserting recoupment against a *prepetition* breach of contract claim of UIC, the Trustee may have the right to reduce that claim by the amount of the Security Deposit.  In such a circumstance, the Trustee's rights as to the Security Deposit would arise as part of the "same transaction" from which UIC's breach of contract claim would arise.  Both would arise under the Lease.  But this is not the instant situation.  Here, the Trustee argues that recoupment entitles him to a defense against UIC's *post-petition* expenses.  However, while the Trustee's rights as to the Security Deposit arise pursuant to the Lease, the UIC's right to allowance of its Administrative Expenses does not.  UIC's right arises pursuant to § 503(b).[13]  That is, UIC's right arises by the operation of law, not by operation of the Lease.  As another court has explained:

> [o]nce a petition in bankruptcy is filed, a new entity is created.  In this instance, Jarvis Kitchenware of D.C., Inc., a corporate entity, would no longer exist and in its place a new place[,] a new entity[,] that of Jarvis Kitchenware of D.C., debtor[,] would evolve.  Hence, there are two separate entities dealing with the landlord.  There is the corporate entity of Jarvis Kitchenware of D.C., Inc., who [prepetition] signed a lease agreement with the landlord, and there is Jarvis Kitchenware of D.C., Inc., debtor, whose rights spring not from any mutual assent of the parties but from operation of law pursuant to 11 U.S.C. § 301.  The entities['] liabilities are treated differently in regard to the rent.   All rent accrued under the lease agreement prior to the filing of the petition would be treated as pre-petition rent.  All post-petition rent accrued by the trustee would be treated as a priority expense of administration under

---

[12] A DIP has all the rights and powers of a trustee.  11 U.S.C. § 1107.

[13] The fact that UIC may seek payment for administrative expenses that are in an amount commensurate with the amount of rent UIC would have received under the Lease does make the request one that arises under the Lease.  The Lease does not entitle UIC to post-petition allowance from the estate for its performance; the Bankruptcy Code does.

> 11 U.S.C. § 503 and subject to being paid out of the debtor's
> estate.

*In re Jarvis Kitchenware of D.C., Inc.*, 13 B.R. 230, 231 (Bankr. D.D.C. 1981).[14]  As such, the Trustee's rights as to the Security Deposit and UIC's right of allowance for its Administrative Expenses have separate nascencies.  Therefore, because the "same transaction" element is not met, the Trustee's asserted defense of recoupment fails.

Not only does the "same transaction" analysis support the conclusion that the Trustee is not entitled to the defense of recoupment, but policy considerations do, as well. The Trustee argues that bankruptcy policy supports his asserted right to recoupment, because not allowing him to reduce the Administrative Expenses by the Security Deposit would visit an injustice upon the general unsecured creditors.  Reducing the Administrative Expenses by the amount of the Security Deposit, posits the Trustee, would prevent the estate from going out-of-pocket to pay the Administrative Expenses, and thereby preserve more assets for the general unsecured creditors' pool.  While the Trustee is correct in his assertion that the general unsecured creditors would benefit from reducing the Administrative Expenses first, this benefit does not establish his right to the defense of recoupment.  Despite the Trustee's argument, any benefit to the general

---

[14] *In re Jarvis* presents a difficulty in this regard: the court characterized the trustee's position as a claim to setoff rather than a defense of recoupment (although the trustee's request to offset was asserted in response to the creditor's motion for approval of administrative claim expenses).  The court simply referred to the trustee's claim of "setoff" with no further explanation or analysis.  However, *In re Jarvis* treats the relief request more like one for recoupment, focusing on the fact that the prepetition rent and the administrative expenses did not arise pursuant to the same source, and discussing setoff as a defense rather than an independent claim.  This Court does not find that these inconsistencies undermine the reasoning of *In re Jarvis*, however.  *In re Jarvis* is correct in recognizing that the trustee is not entitled to reduce a post-petition debt by a prepetition security deposit, because the debts do not arise from the same transaction.

13

unsecured creditors is incidental to the application of recoupment, not the objective.  An equitable result can be accomplished only through the satisfaction of the elements of recoupment; equity (at least, as could be achieved through recoupment) cannot be accomplished outside these elements, regardless of who might benefit.  If recoupment were allowed as the Trustee argues—in a situation where the "same transaction" element is not satisfied—simply because of the resultant benefit to the general unsecured creditors, recoupment would not advance equity.  It would simply prefer and benefit the general unsecured creditors without legal ground.

In addition, the Trustee's position effectively would convert UIC's statutory priority payment on its allowed administrative expense into a non-priority right to payment on a general unsecured claim.  If UIC's claim for prepetition breach of contract damages[15] were reduced by the Security Deposit, UIC's (higher priority) Administrative Expenses would be paid in full and its (lower priority) general unsecured claim would be reduced.  By contrast, if UIC's Administrative Expenses were reduced by the Security Deposit, as requested by the Trustee, the Administrative Expenses would be zeroed out, while UIC's general unsecured claim would remain unadjusted or be considerably less diminished.  Under the Trustee's requested treatment, UIC would be stripped right to a higher priority treatment, in exchange for an unreduced but lower priority general unsecured claim.  Moreover, in addition to awarding the general unsecured creditors a benefit to which they are not entitled, this result would undermine the very purpose of § 503(b)—to make it

---

[15] It is anticipated that UIC will file a proof of claim for damages arising from the Lease. Both parties appear to have proceeded upon the understanding that UIC will be seeking payment on a prepetition claim, and the Court adopts this presumption for purposes of this Memorandum & Opinion.

14

easier for debtors to obtain services post-petition by offering assurance that post-petition claims will be granted priority treatment in distribution.

Accordingly, the Court **HOLDS** that the defense of recoupment is not available to the Trustee, and that that allowing the Trustee to reduce the Administrative Expenses by the amount of the Security Deposit is not proper.

The Court does not hold, however, that the Trustee may not assert the defense of recoupment related to the Security Deposit in other contexts.[16]  The holding here relates only to the defense of recoupment as asserted against the Administrative Expenses set forth in the Motion to Allow.  For example, if UIC were to file a proof of claim (asserting a right to payment arising from a prepetition breach of contract claim, presumably) and the Trustee were to object to such proof of claim, the Trustee would be free to assert the defense of recoupment, if he believes it to be applicable. And if the Trustee were to prevail on this defense, UIC's allowed prepetition claim then would be reduced by the Security Deposit, until either the Security Deposit is depleted or the allowed prepetition claim is zeroed out, whichever comes first. If the prepetition claim is zeroed out but the Security Deposit has not yet been depleted, the Trustee then would be free to pursue the rights—if any—that he may have under the Lease or state law, as to the remainder of the Security Deposit.

### III.  CONCLUSION

Consistent with this Memorandum & Opinion, the Court renders its holdings on the

---

[16] To the degree that either party seeks a declaration from the Court as to the availability of the defense of recoupment or setoff as to any claims or expenses not asserted in the Motion to Allow, the Court declines to opine, as such issue is not properly before the Court at this time.

two threshold issues and **ORDERS** that this Memorandum & Opinion be incorporated in full into the order that ultimately is entered disposing of the Motion to Allow.  This matter now will proceed to the evidentiary phase.  The parties are cautioned that the Court will not admit or allow any testimony or exhibits that are inadmissible as irrelevant under the Federal Rules of Evidence and this Memorandum & Opinion.

In addition, the Court **ORDERS** that the February 11 hearing be converted to a non-evidentiary status conference, at which the parties may propose a date for the evidentiary portion of the hearing on the Motion to Allow.

CHARLES E. RENDLEN, III
U.S. Bankruptcy Judge

DATED:  February 5, 2009
St. Louis, Missouri
MTC

David D. Farrell
Thompson Coburn
One US Bank Plaza
St. Louis, MO 63101

Bruce E. Strauss
400 Peck's Plaza
1044 Main
Kansas City, MO 64105

Eric L. Johnson
1000 Walnut St. Ste 1400
Kansas City, MO 64106-2140